166 N.J. Super. 275 (1979)
399 A.2d 993
ROBERTA GABOR, MICHAEL ORIENTO, AND LYNN DOSCHER, PLAINTIFFS-APPELLANTS,
v.
WILLIAM F. HYLAND, ATTORNEY GENERAL STATE OF NEW JERSEY, ANNE KLEIN ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1979.
Decided February 23, 1979.
*276 Before Judges CONFORD, PRESSLER and KING.
Mr. Peter M. Cervantes, attorney for the appellants.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for the respondents (Ms. Erminie L. Conley, Assistant Attorney General, of counsel; Mr. Robert J. Haney, Deputy Attorney General, on the brief).
PER CURIAM.
Plaintiffs, Medicaid beneficiaries, brought this action for declaratory relief, seeking either the total elimination or a highly restrictive judicial interpretation of that portion of the Medicaid benefit form by which the recipient-patient authorizes the provider of reimbursable services to release "medical and other information" to the Division of Medical Assistance and Health Services, Department of Human Services. The complaint was dismissed *277 pursuant to R. 4:6-2(e) for failure to state a claim upon which relief can be granted.[1] Plaintiffs appeal. We affirm.
The precipitating cause of this action lies in the indictment for Medicaid fraud of Dr. Abraham Chaplan, a New Jersey psychiatrist whose patients all three plaintiffs were. Dr. Chaplan was ultimately convicted in June 1978 of 104 counts of fraudulently obtaining Medicaid payments for what he claimed to have been 50-minute individual psychotherapy sessions but which were actually either group sessions or 15-minute individual sessions. During the course of the State's investigation Chaplan's patient records, including the records of two plaintiffs here, were subpoenaed. They were not, however, introduced into evidence either before the grand jury or at trial. Nor were they made public in any way. Their use was limited to review only by those public officials and employees directly involved in investigating and prosecuting the charges against Chaplan. Two of the plaintiffs were subpoenaed to testify before the grand jury and all three testified at trial, one for the State and two for the defense. None ever objected to giving testimony on the basis of any alleged patient-physician privilege.
The gravamen of the complaint was that the authorization heretofore referred to, allegedly constituting a before-the-fact waiver of the patient-physician privilege, violated both their equal protection rights and their constitutionally protected right of privacy. They further alleged that in no event should the authorization be construed as extending to any information other than the dates, times and places of treatment. *278 Finally, they sought an allowance of attorneys fees incurred in the prosecution of the action.
The authorization objected to reads as follows:
PATIENT'S CERTIFICATION: Authorization to Release Information, and Payment Request. I certify that the service(s) covered by this claim has been received, and I request that payment for these services be made on my behalf. I authorize any holder of medical or other information about me to release to the Division of Medical Assistance and Health Services or its authorized Agents any information needed for this or a related claim. Signature (Patient or authorized representative).
We are satisfied that the State's insistence on this authorization as a condition of Medicaid payment is, on its face, in no way constitutionally offensive and is, moreover, a requirement reasonably related to its obligation to monitor the provision of Medicaid services by establishing procedures by which it can assure the quality of services as well as the detection of fraud. The Medicaid program, as a joint federal and state undertaking, requires that states electing to participate therein do so in comformance with federal law. See Gould v. Klein, 150 N.J. Super. 519, 522 (App. Div. 1977), certif. den. 75 N.J. 539 (1977) Federal law, both by statute and regulation, requires state Medicaid plans to include a variety of specific procedures intended to assure the success of such monitoring, including access to all necessary records. See, e.g., 42 U.S.C.A. § 1396a(a) (19), (27) and (30), 42 C.F.R. § 450.80. This State elected to participate in the Medicaid program in compliance with federal law by enactment in 1968 of the Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 et seq., implemented by the promulgation of administrative regulations, N.J.A.C. 10:49-9.1 et seq. N.J.S.A. 30:4D-7 expressly requires the Commissioner of the Department of Human Resources to report to federal authorities as required, to restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with administration of the act, *279 and to recover any benefits improperly paid. In particular respect of patient and provider records, N.J.A.C. 10:49-1.23 requires specific records to be kept and provider certifications to be made, and N.J.A.C. 10:49-1.22 assures the confidentiality of records so maintained except as required by law for program administration.
Obviously, both the Federal and State Governments were not only free to but were also eminently prudent in building into the Medicaid program such procedures as are reasonably necessary to permit both quality control and fraud detection. Just as obviously, access by appropriate public officials to otherwise confidential patient records and not merely to information regarding the time, date and place of treatment is an essential component of such procedures, which constitute neither an invidious discrimination as between indigent and nonindigent patients nor an undue intrusion into the privacy of Medicaid recipients.
We further point out that the physician-patient privilege, alleged by these plaintiffs to be improperly abrogated by the authorization here complained of, is entirely a statutorily-created privilege which the statute itself declines to extend to information which either the physician or patient is required by law to report to a public official. N.J.S.A. 2A:84A-22.2.
We do not intend to suggest that once a public official avails himself of access to a Medicaid patient's record he either is or should be free to make indiscriminate disclosure thereof. As we have noted, N.J.S.A. 30:4D-7(g) requires the Commissioner "[t]o provide safeguards to restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with administration" of the act. Clearly, then, a patient whose records are subpoenaed for production before a grand or petit jury would have the right to resist, by appropriate application to the court, the disclosure of any portion of his record not reasonably related to the purpose of the proceeding in whose aid *280 the subpoena issued. See In re Farber, 78 N.J. 259 (1978),[2]cert. den. ___ U.S. ___, 99 S.Ct. 598, 59 L.Ed.2d ___ (1978).
For the foregoing reasons we are satisfied that the patient's authorization included in the Medicaid form and which is the subject of this complaint is facially unobjectionable.
Affirmed.
NOTES
[1] In view of the State's reliance on an affidavit reciting facts relating to official use of the pertinent patient records obtained as a result of the authorization complained of, the motion should have been regarded as one for summary judgment rather than one addressed to the pleadings alone. We are satisfied, however, that the defendants were entitled to dismissal of the action and that the technical error in denominating the motion was inconsequential.
[2] No such application had ever been made by these plaintiffs during the course of the pendency of the Chaplan investigation and trial, a now concluded matter.